UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-567-GNS

**ANDRIA M. PARIS,**                                                                                      **Plaintiff,**

v.

**NANCY A. BERRYHILL, DEPUTY**
**COMMISSIONER OF SOCIAL SECURITY,**                                                **Defendant.**

### Report & Recommendation

Claimant Andria M. Paris has filed this lawsuit challenging the Social Security Commissioner's denial of her request for disability insurance benefits ("DIB"). The District Judge has referred this matter to the undersigned Magistrate Judge for a report and recommendation. (DN 16.) For the reasons below, the undersigned recommends that the Court AFFIRM the Commissioner's decision.

### I. Background

Paris applied for DIB on May 8, 2014. (DN 15-5, PageID # 227.) The Commissioner denied her application initially and again upon reconsideration. (DN 15-3, PageID # 148, 167.) Paris then appeared before Administrative Law Judge Gloria B. York (the "ALJ") by video teleconference for a hearing on June 16, 2016. (DN 15-2, PageID # 79, 81.) On July 29, 2016, the ALJ also found that Paris was not disabled. (PageID # 56.) In her written opinion, the ALJ made the following findings.

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since April 6, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: low back pain with lumbago; multiple sclerosis; migraine headache; a depressive disorder; an anxiety

disorder; a borderline personality disorder; and a possible borderline intellectual functioning (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. . . . [T]he claimant has a residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b). She can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; and is limited to routine, repetitive tasks which require one-step to three-step instructions, only occasional interaction with supervisors and coworkers and no interaction with the general public in a job that is not fast paced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 24, 1979 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2013, through the date of this decision (20 CFR 404.1520(g)).

(PageID # 62–73.) The Appeals Council denied Paris's request for review on July 14, 2017. (PageID # 35.) She initiated this action on September 15, 2017 (DN 1), and she filed her fact and law summary (DN 17) on August 6, 2018.[1] The Commissioner filed her fact and law summary (DN 22) on October 31, 2018.

---

[1] Paris's fact and law summary has unusually narrow margins and spacing. If formatted appropriately, the document would have been approximately 26 pages long. Counsel is cautioned to

## II. Standard of Review

The Social Security Act, 42 U.S.C. § 401 *et seq.*, authorizes payment of DIB to certain disabled individuals. 42 U.S.C. § 423(a). The Commissioner is responsible for making regulations that carry out the Act's provisions and determining whether claimants are entitled to benefits. 42 U.S.C. § 405(a)–(b). Accordingly, the Commissioner has promulgated a sequential five-step process for evaluating disability claims. *See* 20 C.F.R. § 404.1520(a)(4).

Where, as here, a claimant alleges that the Commissioner committed error in the evaluation process, the court may only ask whether the Commissioner followed the regulations properly. 42 U.S.C. § 405(g). This generally requires determining whether the Commissioner's findings of fact are "supported by substantial evidence." *Id.* But any "failure to follow agency rules and regulations" can warrant reversal or remand, even if the record could justify the Commissioner's conclusion. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). In short, "[t]his court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Cf. Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). It can exist "even if substantial evidence would also have supported the opposite conclusion." *Id.* In fact, the court "may not even inquire whether the record could support a decision the other way." *Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1994). Therefore, "it is not necessary that this court agree with the Commissioner's finding,

---

follow this Court's style requirements and respect its length restrictions in the future. *See* LR 5.1(b); LR 7.1(d).

as long as it is substantially supported in the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### III. Analysis

Paris argues that the ALJ erred in three ways: by not evaluating her multiple sclerosis "longitudinally," by reviewing her "inadequately" under Listing 11.09, and by misevaluating her residual functional capacity. (DN 17, PageID # 1099.) These arguments relate to steps three and four of the Commissioner's five-step evaluation process.

A. The August 2016 MRI

First, a preliminary issue: In her fact and law summary, Paris mentions an MRI from August 2016. (DN 17-1, PageID # 1112.) Because the MRI took place after the ALJ issued her opinion, which is the Commissioner's final decision in this case, the MRI is new evidence.

The Court may issue a so-called sentence six remand for further administrative proceedings "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). However, the Court may not simply consider new evidence which was not before the ALJ while reviewing the ALJ's decision. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

As the Commissioner points out (DN 22, PageID # 1134), Paris has not attempted to articulate a sentence six argument or show that the August 2016 MRI is material. Accordingly, the undersigned will not recommend a sentence six remand or consider the August 2016 MRI further.

B. The ALJ's Determination Regarding Listing 11.09

At step three, the ALJ determines the "medical severity" of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment meets or equals one of the "listings" in the regulation's appendix, the ALJ will automatically find that she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary."). It is the claimant's burden to demonstrate that each impairment meets or medically equals a listing. 20 C.F.R. § 404.1520(d); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Paris challenges the ALJ's finding that her multiple sclerosis did not meet or equal Listing 11.09. (DN 15-2, PageID # 62.) At the time of the ALJ's decision, the listing read as follows:

11.09 Multiple sclerosis. With:

A. Disorganization of motor function as described in 11.04B; or

B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or

C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016).[2] Paris argues that "the ALJ did not adequately explain her findings" regarding Part C of the listing or "adequately assess[] the requirements of the Listing." (DN 17-1, PageID # 1114.) She asserts that her KORT physical therapy "was the straw that broke the camel's back" and "provides the needed proof to satisfy

---

[2] A revision of the listing took effect in September 29, 2016. *See* Revised Medical Criteria for Evaluating Neurological Disorders, 81 FR 43048, 2016 WL 3619263.

5

Listing 11.09C," though she also concedes that her neurologist's examinations showed "good motor power." (PageID # 1115.) The Commissioner responds that the ALJ evaluated the medical evidence of record; that Paris's physical therapy notes, treating physicians' notes, and MRIs show she didn't satisfy a listing; and that the state reviewing physicians also found that Paris didn't meet a listing. (DN 22, PageID # 1130–32.)

The undersigned finds that substantial evidence supports the ALJ's finding that Paris's multiple sclerosis did not satisfy Listing 11.09. The ALJ's direct discussion on this point is concise, but so is her task at step three: the finding itself is simply a comparison to a standard of medical severity. Elsewhere, the ALJ's decision discusses Paris's multiple sclerosis at length. (*See, e.g.*, DN 15-2. PageID # 64–68, 69–70.) That analysis enabled the ALJ to fairly assess the severity of Paris's multiple sclerosis. Furthermore, it is unclear how Paris's physical therapy could have, as she argues, *worsened* her condition enough to satisfy the listing's fatigue and weakness prong. According to her treatment notes, she "made excellent progress" and eventually completed her program. (DN 15-8, PageID # 732, 756.) And as she states elsewhere in her own fact and law summary, KORT rated her strength 4 of 5 at its worst. (DN 17-1, PageID # 1108–09.) Besides, even if the record could support a finding that Paris's multiple sclerosis satisfied Listing 11.09, this Court would not be permitted to second-guess the ALJ's finding, which is also supported by substantial evidence. *See Smith*, 893 F.2d at 108.

C. The ALJ's Determination of Residual Functional Capacity

At step four, the ALJ determines a claimant's residual functional capacity ("RFC"), or "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted); 20 C.F.R. §§ 404.1545(a), 404.1546. To do so, the ALJ considers medical source statements and all

other evidence of record. 20 C.F.R. § 404.1545(a)(3). The claimant bears the burden of proof at this step. *Jones*, 336 F.3d at 474.

Here, the ALJ determined that Paris was capable of "a reduced range of light work." (DN 15-2, PageID # 64.) Paris raises two objections to that finding.

### 1. The ALJ's Evaluation of Paris's Multiple Sclerosis

In assessing Paris's RFC, the ALJ considered, *inter alia*, her multiple sclerosis. The ALJ noted that Paris had "a bona fide diagnosis of MS," but also that the condition "appear[ed] relatively stable" according to "MRIs across several years." The ALJ also noted that Paris "may have flares of worsened symptoms," but that her flare-ups were infrequent. According to the ALJ, Paris's impairments did not "rob [her] of all useful work abilities," and "current objective findings" indicated that Paris is able to "perform at least light exertion." (DN 15-2, PageID # 69.)

Paris argues that "the ALJ did not adequately view her multiple sclerosis in terms of the longitudinal, neurodegenerative disease that it is, nor does the ALJ appear to understand the 'waxing and waning' nature" of her symptoms. (DN 17-1, PageID # 1111.) She alleges that the ALJ "fail[ed] to recognize several key factors," namely that she was diagnosed "during a flare in 2011"; that her income never returned to previous levels after her diagnosis; that she was not working full time, despite "strong evidence that [she] wanted to work"; that the ALJ held "her need to support her family against her"; and that she had a major relapse in May 2015 during her KORT physical therapy. (PageID # 1112–14.) The Commissioner argues that the ALJ evaluated Paris's multiple sclerosis properly and that her evaluation is consistent with the medical evidence of record. She also points out that the tests show no degenerative changes between 2014 and 2015. (DN 22, PageID # 1133.)

Paris's arguments echo the cases she cites. She relies on two Sixth Circuit opinions which remanded for improper consideration of the respective claimants' multiple sclerosis diagnoses. In *Parish v. Califano*, the ALJ "relied heavily" on discrete intervals of normal activity and concluded that the claimant had the RFC to perform substantial gainful activity. *Id.* at 189, 191–92. It was error to "plac[e] undue reliance on [a] brief and temporary interruption of plaintiff's progressively disabling condition." 642 F.2d 188, 193 (6th Cir. 1981). Similarly, in *Wilcox v. Sullivan*, the ALJ "erroneously relied on Wilcox's activities during the periods of remission as evidence of his substantial gainful employment" and concluded that he was not disabled. 917 F.2d 272, 275, 278 (6th Cir. 1990). That ALJ (the third to consider Wilcox's application) did not duly consider his "numerous" periods of exacerbation or his "several" hospitalizations. *Id.* at 277–78.

The undersigned finds that the ALJ's evaluation in this case is distinguishable from those criticized in *Parish* and *Wilcox*. The ALJ acknowledged Paris's routine fatigue and other debilitating symptoms, as well as her "infrequent flares." (DN 15-2, PageID # 65.) She reviewed medical records by treating physicians from 2009 to 2016, beginning before Paris was even diagnosed with multiple sclerosis. (PageID # 65, 67.) And she evaluated the results of four MRIs, performed from 2011 to 2015, which showed no new lesions in 2013 and no progression of the disease in 2015. (PageID # 67.) In short, substantial evidence supports the ALJ's findings that Paris's multiple sclerosis is "relatively stable" and that her flare-ups are "infrequent."

2. *The ALJ's Consideration of Dr. Meckler's Opinions*

Again regarding Paris's multiple sclerosis, the ALJ considered, *inter alia*, the notes and clinical examinations of treating physicians Jason Meckler, a neurologist, and Jennifer Patterson, a nurse practitioner. (DN 15-2, PageID # 66–67.) The ALJ also considered two functional capacity statements by Meckler. (PageID # 67.) In a June 2013 medical statement, Meckler

8

restricted Paris to four or five hours of work per day; standing 60 minutes at one time or during the workday; lifting 10 pounds on an occasional basis; and lifting 5 pounds on a frequent basis. He also permitted constant use of her arms to work. (DN 15-7, PageID # 349.) In a September 2015 medical statement, he restricted her to two hours sitting and two hours standing each eight-hour workday; lifting and carrying five pounds; and using her harms only one third of the day. He also indicated that she would need the highest available number of unscheduled breaks and days off. (PageID # 663.) The ALJ gave little weight to Meckler's functional capacity statements because the objective records "simply [did] not support his extreme limitations." (PageID # 70.)

Paris argues that the ALJ improperly interpreted "the objective clinical findings" herself instead of accepting "the very consistent opinions of a specialist trained in the minutia of multiple sclerosis treatment," presumably meaning Meckler. (DN 17-1, PageID # 1115.) In support, she asserts that several limitations, at least two of which were "adequately quantified in Dr. Meckler's medical source statement," "never ma[d]e their way into the ALJ's discussion of RFC, despite being mentioned dozens of times in the medical record." (PageID # 1116.) The Commissioner argues that the ALJ assigned proper weight to Meckler's opinion. (DN 22, PageID # 1135–37.) In support, she asserts again that the MRIs show no progression of multiple sclerosis; that the ALJ "did consider the changing nature of [Paris's] condition" by noting her "'infrequent flares' of the MS every two to three months"; and again that in physical therapy Paris achieved 5 of 5 strength, met her short-term strength goals, and was discharged to a home program. (PageID # 1133–35.)

The undersigned finds that the ALJ treated Meckler's opinions properly. Paris is correct that ALJs may not "play doctor" and make their own medical judgments. *Simpson v. Comm'r of*

9

*Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996)). However, ALJs *must* weight the quality of the medical opinions in the record, and their "reliance on objectively determinable symptoms and established science" is one factor in doing so. *Id.* (quoting *Underwood v. Elkay Min., Inc.*, 105 F.3d 946, 951 (4th Cir. 1997)); *accord.* 20 C.F.R. § 404.1527(c). Here, the ALJ found Meckler's statement to be inconsistent with the evidence. To make that finding, the ALJ directly considered the record's objective medical evidence. (DN 15-2, PageID # 70.) She did not generate her own medical findings as Paris alleges. Substantial evidence supports the weight assigned by the ALJ to Meckler's opinion.

## IV. Recommendation

In short, the undersigned finds that the ALJ's decision is supported by substantial evidence and that the ALJ properly followed the Commissioner's regulatory scheme. Accordingly, the undersigned recommends that the District Judge AFFIRM the Commissioner's final decision.

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), the above-signed Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. FED. R. CRIM. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.*; *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

cc: Counsel of record